Mary Jane GRAY, Appellant (Garnishee Defendant Below),

v.

NATIONAL CITY BANK, INDIANA f/k/a Union State Bank, Appellee (Plaintiff Below).

No. 29S02–9712–CV–636.

Supreme Court of Indiana.

Dec. 1, 1997.

R.C. Richmond, III, Indianapolis, for Appellant.

George W. Hopper, Mark R. Galliher, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

Donald and Mary Jane Gray ("Donald" and "Jane") were married in 1968 and remained married from that point on. In 1986 Union State Bank, a predecessor of plaintiff National City Bank of Indiana, NA, (collectively "NCB") lent $787,500 to Donald in an unsecured loan on which Jane had no liability. The financial statements furnished to NCB showed Donald's net worth in excess of $20 million and reported an annual income of over $1 million for the preceding ten years. In 1992 Donald stopped making scheduled payments. NCB sued to collect the unpaid balance and obtained a judgment in March 1994 in the amount of $805,355. Efforts to collect were unsuccessful. In September 1994 NCB learned in a deposition in proceedings supplemental that the couple had recently sold their Florida home for $2.3 million and received $418,000 for their equity in the property, half of which was Donald's. NCB's lawyers were also told that the entire proceeds of this sale had been placed in a Florida bank account owned by Jane alone. Armed with this information, NCB initiated a garnishment proceeding against Donald and Jane and obtained a temporary restraining order against "transferring, spending, concealing, or otherwise dissipating" funds from the Florida account. After the issuance of the t.r.o., but before the garnishment papers were served on Jane, Jane delivered a notice to Donald that she was exercising her right of setoff against Donald's interest in the Florida account to repay a previously existing debt from Donald to her. NCB challenged Jane's right to Donald's share of the proceeds. After a hearing on the garnishment notice, the trial court ultimately found that the setoff was invalid for three independent reasons, and awarded a garnishment order to NCB. Jane appealed and the Court of Appeals reversed. *Gray v. National City Bank, Indiana*, 673 N.E.2d 544 (Ind.Ct.App.

1996) (unpublished table decision). We grant transfer and affirm the trial court. ·

In 1984, following Donald's receipt of the proceeds of a sale of his interest in Crime Control, Inc., Donald and Jane entered into an arrangement that they characterize as a postnuptial agreement. The basic terms of this arrangement were: (1) Donald transferred $1.6 million to Jane; (2) Jane agreed not to claim anything in Donald's estate or against the marital property in the event of dissolution; and (3) mutual releases of all claims between the two. Beginning in 1986, Jane made dozens of transfers to Donald in amounts typically of several thousand dollars each. These funds were apparently used largely to fund Donald's investment in METS, Inc., which was attempting to develop a mobile communications system. In each case a promissory note was created from Donald to Jane, but there was apparently no security for these transactions and no efforts to collect any indebtedness until after NCB obtained its judgment in 1994. In 1992 all of these prior notes were consolidated into one note for the accumulated principal and accrued interest totaling slightly over $1.6 million (this amount is apparently coincidentally similar to the amount of the original transfer from Donald to Jane). The consolidated note was payable on demand on several "trigger events" one of which was Donald's insolvency. The record does not indicate what happened to most of Donald's apparent net worth in the intervening six years, but it does tell us that by 1992, when NCB sued to collect its note, Donald had granted his siblings security interests in collections of vehicles and had given Jane a security interest in his financial assets, principally stock and notes of METS. By the time of his testimony in proceedings supplemental in 1994 he stated his inability to pay his creditors, including NCB.

At the hearing on NCB's garnishment proceeding, some other noteworthy information emerged. "For about six months" prior to September 1994, Jane had been paying (and was continuing to pay) the household bills for the couple. She also had issued checks to other creditors of Donald as well as providing funding to permit METS to pay its obligations (notably, apparently withholding tax obligations as to which the directors of METS could be personally liable). According to Jane, many 'of these checks were prepared by Donald's secretary and Jane "just signed them."

Faced with this highly creative plan for household financial management, the trial court concluded that despite its ingenuity the setoff would fail. First, the trial court found that there was no consideration for the initial transfer in 1984, with the result that there was no bona fide debt from Donald created by the purported loans back to Donald. Therefore, there was no obligation from Donald to Jane that could be set off against Jane's obligation to complete the transfer of the proceeds of the sale. As a result, that obligation from Jane remained intact and could be the subject of NCB's garnishment. Second, the trial court reasoned that if Jane ever had a right of setoff, it was waived by Jane when she began funding Donald's personal expenses out of one pocket while purporting to setoff his "debt" to her from another. Finally, the trial court found that the setoff violated the terms of the t.r.o. that had been entered on September 13, 1994 and was void for that reason.

The Court of Appeals reversed on all three grounds. The court held there is no reason that marital partners cannot have a binding postnuptial agreement, and this one was properly documented and should be honored according to its terms. It also agreed with Jane that the restraining order was not violated because, by its terms, it prohibited only transferring or encumbering the Florida bank account. Funds in a bank account are owned by the bank and the account creates a debtor creditor relationship between the bank and the depositor. Because ownership of the funds in the account was unaffected by the setoff, there was neither a transfer nor an encumbrance of the account and therefore no violation of the order, the court reasoned. We do not reach either of these two grounds for affirmance of the trial court because we agree with the trial court that a waiver of the right of setoff was effected by these facts as found by the trial court.

Setoff law on which both parties rely was developed in the context of a bank's effort to set off its claim against a depositor when faced with a garnishment by a creditor of the depositor. Specifically, both parties point to *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187 (Ind.Ct.App. 1987). In that case the Court of Appeals noted first that as a general proposition, a bank's right of setoff is superior to the equitable lien of a judgment creditor of a depositor because the creditor steps into the shoes of the depositor and is subject to the same defenses. *Id.* at 199. However, the "garnishee's [Jane's] treatment of a debtor's [Donald's] assets inconsistent with its immediate right of setoff is a waiver of that right in the face of the garnishor's [Bank's] claim." *Id.* As the Court of Appeals observed, citing *First Nat'l Bank & Trust Co. of Tulsa v. Lundquist*, 172 Okla. 453, 45 P.2d 524 (1935), the typical case in which this doctrine is applied arises from the garnishee bank's having attempted a setoff while at the same time honoring checks on the account and in effect preferring one creditor of the depositor over another. That case found the bank to have waived its right of setoff when it pulled amounts from an account subject to garnishment, and transferred the funds to another account of the same depositor and proceeded to honor drafts in favor of other creditors.

Jane relies on the point that *Samocki Bros.* and other cases finding waiver of a right of setoff usually refer to the garnishee's handling of assets "of the debtor" in a manner inconsistent with setoff. Here, she contends, she did not do anything with Donald's assets because the account was owned by Jane, not Donald. The Court of Appeals agreed with Jane and found no waiver on that basis. We believe this is a distinction without a difference and that the principle established in *Samocki Bros.* is equally applicable here. In *Samocki Bros.* the garnishee bank's action in honoring some checks in favor of other creditors of the depositor was held to be inconsistent with the bank's effort to offset its claims against the depositor. It is even more inconsistent for the garnishee to furnish new unsecured "loans" to the depositor for general purposes while at the same time asserting its setoff rights to defeat the

garnishor. And it is equally inconsistent for the garnishee to make gifts to the debtor if that is how Jane's payments of household bills and Donald's creditors should be viewed. The trial court correctly concluded that Jane's continuing to fund new transfers to Donald, even if viewed as bona fide loans, was inconsistent with the assertion of setoff rights to defeat NCB's garnishment, and, as a matter of law, the setoff fails.

Because we hold that the setoff fails under the waiver doctrine, we do not address the other plausible grounds on which the trial court also invalidated the setoff. Nor do we consider the ultimate legal effect of the placing of Donald's share of the proceeds in Jane's Florida account.

Transfer is granted. This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.