DOMAIN INDUSTRIES, INC., Appellant,

v.

FIRST SECURITY BANK & TRUST
CO., an Iowa Corporation, Appellee.

No. 2–56911.

Supreme Court of Iowa.

May 21, 1975.

Heard before MOORE, C. J., and Le-GRAND, REES, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

This is an action alleging defendant bank wrongfully converted a bank account upon which plaintiff claims a lien by virtue of a filed security instrument under Chapter 554, Article 9, The Code. The trial court sustained defendant's motion to dismiss on two grounds which we discuss later. We reverse and remand the case for further proceedings.

The account was owned by Kenneth Elliott and Arlene Elliott, hereafter referred to jointly as Elliott. It should be noted no claim is made by Elliott against defendant. The dispute is between plaintiff and defendant as to which is entitled to the Elliott bank account.

In considering a motion to dismiss, the well pleaded facts are assumed to be true. Such a motion may be properly sustained only when it appears to a certainty plaintiff has failed to state a claim on which relief may be granted under any state of facts which could be proved in support of the petition. Estate of Wittman v. Huston, 215 N.W.2d 223, 224 (Iowa 1974); Rick v. Boegel, 205 N.W.2d 713, 715–716 (Iowa 1973).

Briefly stated, the pleaded facts upon which plaintiff relies are as follows: On July 28, 1971, plaintiff lent Elliott $15,-412.85 to finance a feed store under the name of Elliott's Feed Sales & Service. The loan was evidenced by a promissory note which was secured by Elliott's " * * inventory, feed, feed supplies * * * accounts receivable, equipment * * * company checking accounts * * * additions and replacements thereof * * * and the proceeds of all property secured thereby * * *." A financing statement and security agreement covering this collateral were filed with both the Secretary of State and the Floyd County Recorder.

Dunkelberg, McKinley & Folkers, Osage, for appellant.

Zastrow, Noah & Smith, Charles City, for appellee.

On July 20, 1973, Elliott defaulted in payment of the loan, and plaintiff demanded possession of all collateral securing the indebtedness. Shortly thereafter, plaintiff made both oral and written demand on defendant for the Elliott bank account. In the alternative, plaintiff asked that the account be "frozen," apparently until the rights of the parties could be determined. Both requests were refused. Elliott was also indebted to defendant bank, although that loan was neither due nor in default. On the same day defendant rejected plaintiff's demand for the account, it applied the Elliott balance of $4,468.07 to partially pay its own Elliott loan.

Plaintiff asserts this was a wrongful conversion, for which it asks actual damages of $4,468.07 and exemplary damages of $25,000.

The trial court sustained defendant's motion to dismiss the petition on two grounds. First, the trial court ruled plaintiff acquired no lien on the Elliott bank account despite the express provisions of the security instruments because of the exclusion in § 554.9104(k), The Code, 1971; and, next, the trial court held defendant's refusal to honor plaintiff's demand for the Elliott account was authorized by § 524.808, The Code, 1971, which effectively precluded action for wrongful conversion.

Defendant appears to have abandoned reliance on § 554.9104(k), and its brief is devoted solely to arguing the bank's rights under § 524.808. However, we nevertheless consider both grounds of the ruling in reaching our conclusion.

I. The first question is whether plaintiff could establish a lien on the Elliott bank account.

We take it as agreed such a lien would exist under the terms of the security instruments unless the exclusion set out in § 554.9104(k), The Code, 1971, operated to negate it.

At all times material to this controversy that statute provided in pertinent part:

"This Article [9] does not apply * * * (k) to a transfer in whole or in part of any of the following: * * * any deposit, savings, passbook or like account maintained with a bank. * * * "

From early Uniform Commercial Code days there was hot dispute about the proper meaning of this exclusion.

The argument concerned whether the statute barred *all* bank accounts from the protection of Article 9, or only excluded the pledge of accounts as *original collateral*. Most courts and commentators agree with the latter position and hold it is only the use of bank accounts as original collateral which is proscribed. Commercial Discount Corp. v. Milwaukee Western Bank, 61 Wis.2d 671, 214 N.W.2d 33, 39 (1974); Morrison Steel Co. v. Gurtman, 113 N.J.Super. 474, 274 A.2d 306, 310 (1971); Associates Discount Corp. v. Fidelity Union Trust Company, 111 N.J.Super. 353, 268 A.2d 330, 332 (1970); cf. Howarth v. Universal C. I. T. Credit Corp., (W.D.Pa.1962), 203 F.Supp. 279; Coogan, Kripke and Weiss, The Outer Fringes of Article 9, 79 Harvard L.Rev. 229–263. See also Comment 2, § 554.9306(4)(d), 35B Iowa Code Annotated, page 415.

■ We believe the view expressed by these authorities represents the intent of our legislature in adopting the Uniform Commercial Code. Any uncertainty about this was cleared up when the legislature enacted Chapter 1249, § 31 (*l*), Laws of the 65th General Assembly, amending § 554.9104(k). Although that amendment did not become effective until July 1, 1974, and does not affect this appeal, it nevertheless sheds considerable light on the intended meaning of the statute before the amendment.

The amended statute (§ 554.9104(*l*), The Code, 1975) now provides:

"This article does not apply * * * (*l*) to a transfer of an interest in any deposit account (§ 554.9105, subsection 1) *except as provided with respect to proceeds*

*(§ 554.9306) and priorities in proceeds (§ 554.9312)."* (Emphasis supplied.) .

The proceeds section referred to above (§ 554.9306) states in part:

"(1) 'Proceeds' include whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. * * * Money, checks and the like are 'cash proceeds'. * * * (2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale * * * and also continues in any identifiable proceeds * * *."

■ Under this amendment, bank accounts to the extent they include identifiable proceeds from the sale of collateral are now subject to the lien which originally encumbered the collateral itself.

Ordinarily this amendment, occurring as it did after the events under review, would not aid plaintiff's cause. However, the 65th General Assembly enacted another statute which now appears as § 554.11108, The Code, 1975, and which has vital bearing on this question. We set it out in part:

*"Presumption that rule of law continues unchanged.* Unless a change in law has clearly been made, the provisions of this chapter as amended shall be deemed declaratory of the meaning of this chapter prior to amendment * * *."

■ We have already mentioned the uncertainty concerning the meaning of § 554.-9104(k) in its original form and the opinion of most authorities that it was always intended to mean what the 1974 amendment now says it means. We are convinced the amendment did not work any change in our existing law but only clarified what was always the intended meaning of the exclusion. Under the provisions of § 554.11108, we hold the amendment should be "deemed declaratory of the meaning * * * prior to the amendment."

■ It follows plaintiff could assert a lien under its security agreement upon proper proof the Elliott bank account in-

cluded identifiable proceeds from the sale of collateral. To state it another way, it does not appear to a certainty plaintiff has failed to plead a claim on which relief could . be granted under any state of facts which might be proved in support of its petition.

II. This brings us to the second ground for dismissal of plaintiff's petition. It raises this issue: assuming plaintiff has a lien on the Elliott bank account, do the provisions of § 524.808, The Code, permit defendant bank to disregard the lien and to appropriate the account to pay Elliott's indebtedness to itself? The statute provides in part as follows:

"(I) A state bank shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account made by a person or persons other than: (a) The customer in whose name the account is held * * * (2) To require a state bank to recognize an adverse claim to, or adverse claim of authority to control, a deposit account, whoever makes the claim must either [obtain a court order with reference thereto or deliver to the bank a bond indemnifying the bank from loss.]"

■ Plaintiff's demand for the Elliott bank account was not accompanied by either a court order or an indemnifying bond. Under the statute, defendant was justified in refusing to honor the request. Plaintiff concedes this but challenges defendant's right to appropriate the account to its own use in disregard of the lien.

Before the enactment of § 524.808, which took effect January 1, 1970, a bank often found itself in the position described as follows in Gendler v. Sibley State Bank (N.D.Iowa 1945), 62 F.Supp. 805, 810:

" 'If a deposit is claimed by a person other than the depositor who forbids the bank to pay it to any person other than himself, the bank may be held liable for a disregard of such notice in case the claim is substantiated.' * * *

"If it heeds the notice and refuses to pay the checks of the depositor and then the third party does not substantiate his claim, the bank may have to pay heavy damages to the depositor for the wrongful dishonor of his checks. * * * "

The purpose of the statute is to protect a bank from this kind of dilemma. This is stated another way in Annot., 62 A.L.R.2d 1116, 1117–1118 (1958):

"[The purpose of such statutes is to protect the bank] against the liability to its depositor growing out of its recognition of an adverse claim to the deposit * * and to afford the bank immediate and complete protection * * * where otherwise it would be required, upon receipt of notice of claim, to hold the funds long enough to give claimant a reasonable opportunity to substantiate his claim * * to relieve the bank of liability [of] deciding * * * whether adverse claimant * * * should be recognized."

See also Baden Bank of St. Louis v. Trapp, (Mo.App.1944), 180 S.W.2d 755, 759; Grossmayer Co. v. Campbell, 214 Or. 265, 328 P.2d 320, 325 (1968).

A comment accompanying § 524.808 in Iowa Code Annotated puts the purpose of the statute this way:

"Subsection 2 of this section is intended to require litigants to have such claims determined judicially without involving the state bank in the dispute except to the extent that it must obey a specific court order or judicial process directed to the state bank."

■ The statute was designed to save a bank from deciding at its peril which contesting claimant is entitled to the proceeds of an account it holds for one of them. It was not intended to afford a bank the opportunity to improve its own position to the disadvantage of one or both.

The question is not, although defendant bank argues otherwise, whether plaintiff was entitled to the Elliott account on demand. Clearly under § 524.808 it was not and defendant could properly refuse the request. The question is, rather, could defendant then disregard a lien of which it had notice and apply the encumbered account to its own advantage.

■ In interpreting a statute, particularly when doing so for the first time, we seek the legislative intent in light of the wrong to be remedied and the purpose to be accomplished. We have expressed this principle in various ways, always, of course, with the ultimate goal of giving the statute a reasonable construction which will accomplish, rather than defeat, its purpose. State v. Johnson, 216 N.W.2d 335, 337 (Iowa 1974); State v. One Certain Conveyance, 211 N.W.2d 297, 299 (Iowa 1973); Northern Natural Gas Company v. Forst, 205 N.W.2d 692, 695 (Iowa 1973); Egan v. Naylor, 208 N.W.2d 915, 918 (Iowa 1973); State ex rel. Turner v. Koscot Interplanetary Inc., 191 N.W.2d 624, 629 (Iowa 1971).

■ Applying these guidelines to the present case, we decline to construe § 524.-808 as an absolute bar to a claim for conversion against a bank under the facts alleged in plaintiff's petition.

We hold the trial court erred in sustaining the motion to dismiss on the authority of § 524.808.

We do not, of course, express any opinion concerning the merits of plaintiff's claim; neither do we say defendant bank has no defense to the claim. In reversing the trial court, our ruling is limited to holding plaintiff's petition states a claim upon which, if supported by proper proof, relief might be granted.

III. The case is remanded for entry of an order overruling defendant's motion to dismiss and for further appropriate proceedings.

Reversed and remanded with instructions.