713 P.2d 337

**The ARIZONA BANK, an Arizona corporation, Plaintiff/Appellee,**

**v.**

**WELLS FARGO BANK, N.A., Defendant/Appellee,**

**v.**

**S.R. HUTCHISON, Personal Representative of the Estate of Paul R. Parrette, deceased; and S.R. Hutchison, Trustee under a Trust Agreement of Paul R. Parrette, Defendant/Appellant.**

**No. 2CA–CIV 5491.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 24, 1985.

Ryley, Carlock, & Applewhite, P.A. by John W. Wall and Richard E. Oney, Phoenix, for plaintiff/appellee.

Lewis & Roca by John P. Frank, Phoenix, for defendant/appellee.

Samuel Robert Hutchison, P.C., a corporation by Samuel R. Hutchison, Phoenix, for defendant/appellant.

## OPINION

BIRDSALL, Presiding Judge.

Samuel R. Hutchison, an Arizona resident, was the personal representative and trustee for the decedent, Paul R. Parrette, a California resident. He opened both an inter vivos and a testamentary trust account with the Arizona Bank in his representative capacity. In 1983, at the request of Anne-Lise Parrette and Constance Keenan, both of whom were beneficiaries of Parrette's trust and under his will, the superior court of Monterey County, California ordered the removal of the appellant from those positions and the appointment of the Wells Fargo Bank as his successor. An appeal is pending in the California courts. Under California law, the perfecting of an appeal stays proceedings upon the order including enforcement thereof. Cal. Civil Procedure Code § 916 (1980).

Pursuant to the court's order, Wells Fargo demanded that the appellee Arizona Bank pay over to it, as successor trustee, the balance of the inter vivos trust account, and pay over to a designated attorney in

Monterey the balance of the testamentary account. The appellant similarly demanded that the bank pay him the balance of both accounts.

Faced with adverse claims to the same accounts, the Arizona bank filed an action in interpleader. The trial court granted the bank's motion for summary judgment, ordered the bank to pay the monies into the court, and directed the parties to interplead. The order contained Rule 54(b) language. It then abated the interpleader action pending the outcome of the appellant's appeal in California. This appeal followed. We affirm.

The abatement was the result of motions by Parrette, Keenan, and Wells Fargo. They contend that the abatement is not an appealable order even though the partial judgment directed that it be entered as a final judgment pursuant to Rule 54(b), Rules of Civil Procedure, 16 A.R.S., the court finding there was no just reason for delay. However, the notice of appeal was from that judgment and the relief sought in this appeal would be, if granted, adverse to these parties. They recognize this in their answering brief. In the trial court they sought to have the disputed accounts paid to Wells Fargo. The abatement order was in the nature of alternative relief. It must rise or fall on the order for interpleader. We believe that Parrette, Keenan, and Wells Fargo are properly before this court as appellees. We have accordingly, by separate order, amended the caption to include them. In their answering brief they have fully addressed the issues raised on appeal and now ask that the judgment be affirmed. We need not, and do not, answer the question whether an order of abatement contained in a judgment with Rule 54(b) findings and language is appealable.

The appellant argues that the bank has a duty to pay the accounts directly to him, since he is the depositor, despite the fact that an adverse claim has been made against them. As a general rule, a bank is required by law to honor the order of a depositor. Where, however, the bank receives notice that the funds belong to someone other than the depositor, the bank faces a dilemma. If it honors the demands of the adverse claimant, and the claim turns out to be invalid, the bank may be held liable by the depositor. Conversely, if the bank pays the funds to the depositor, it may be held liable to the adverse claimant should the claim prove valid. This dilemma is best described in *Gendler v. Sibley State Bank*, 62 F.Supp. 805, 810 (N.D.Iowa 1945), quoting 9 C.J.S., Banks and Banking § 285, at 593 (1938):

> " 'If a deposit is claimed by a person other than the depositor who forbids the bank to pay it to any person other than himself, the bank may be held liable for a disregard of such notice in case the claim is substantiated.'
>
> \*     \*     \*     \*     \*     \*
>
> If it heeds the notice and refuses to pay the checks of the depositor and then the third party does not substantiate his claim, the bank may have to pay heavy damages to the depositor for the wrongful dishonor of his checks."

In 1940, the American Bankers Association formulated a model statute to protect banks from just such a dilemma. The statute was aimed at saving banks from having to decide at their own peril which of two or more claimants is entitled to funds deposited with it. See *Gendler*, supra; *Domain Industries v. First Security Bank and Trust*, 230 N.W.2d 165 (Iowa 1975); Annot., 62 A.L.R.2d 1116 (1958). This uniform adverse claims statute has been adopted by a majority of states, including Arizona.[1] Arizona's statute, A.R.S. § 6–233, reads as follows:

> "A. Notice to a bank of an adverse claim is not sufficient to require the bank to refuse to honor the order of any person to whose credit the account stands or who has prior authority on the books of the bank to operate the account, nor is

---

1. The only difference of significance to us here between the uniform statute and Arizona's is that our statute does not exempt fiduciary accounts.

such notice sufficient to require the bank to recognize the adverse claimant in any respect, unless the bank is directed to do so by a lawful order of a court in the United States. In the absence of such court order the bank may refuse to honor the order on the account by any person.

B. For the purposes of this section:

1. 'Adverse claim' means a claim by any person who asserts the right to all or part of a deposit account to the exclusion of anyone to whose credit the account stands on the records of the bank. 'Adverse claim' also includes conflicting claims of any persons to the right to operate an account.

2. 'Adverse claimant' means any person asserting an adverse claim.

Appellant recognizes this statute as controlling but claims that it requires the bank to recognize only the depositor unless and until the bank is directly ordered by a court to do otherwise. We disagree.

█ This court has held, as have numerous other Arizona courts, that a "statute must be given effect according to its plain and obvious meaning." *P.F. West, Inc. v. Superior Court*, 139 Ariz. 31, 34, 676 P.2d 665, 668 (App.1984). See also *United States v. Mehrmanesh*, 689 F.2d 822 (9th Cir.1982); *United States v. Metate Asbestos Corp.*, 584 F.Supp. 1143 (D.Ariz.1984); *Mendelsohn v. Superior Court*, 76 Ariz. 163, 261 P.2d 983 (1953); *Arizona Eastern Railway Co. v. Matthews*, 20 Ariz. 282, 180 P. 159 (1919). To determine whether appellee bank acted unlawfully in refusing to pay the accounts over to appellant, we must look to the language of the statute, which we interpret to be discretionary, not mandatory as the appellant would have it. Section 6–233(A) simply provides that, when notified of an adverse claim, a bank is not *required* to refuse to honor the order of the depositor, nor is it *required* to take notice of the adverse claimant, unless it is directed to do so by court order.

Although the question of the interpretation of the language of § 6–233 is one of first impression in Arizona, holdings from other jurisdictions with the same or similar statutes also treat it as discretionary. In *Hozova v. Guaranty Trust Co.*, 66 N.Y. S.2d 875, 877 (1946) the court held that the language of the uniform statute "indicates that a bank or trust company is not required or not compelled to recognize [an adverse claim]. It may or may not, as it sees fit in the circumstance." See also *Domain Industries*, supra (when plaintiff's demand for bank account was not accompanied by a court order, the defendant bank was *"justified* in refusing to honor the request"); *Ginsberg v. Manufacturers Hanover Trust Co.*, 55 Misc.2d 1052, 1054, 287 N.Y.S.2d 818, 821 (1968) (the words of the statute "explicitly state that a trust company or savings bank *need not* give any effect to a notice of an adverse claimant" unless ordered by a court to do so); *Sanders v. First National Bank and Trust Co.*, 292 P.2d 160, 162 (Okla.1955) ("the bank does not *have to* recognize such claim"); (emphasis added).

█ Even if the wording of § 6–233 were not clear, the same result is reached by looking to the intent of the legislature. Appellant claims that one legislative intent was to protect banks and their depositors from unreasonable adverse claims. In fact, the purpose of the statute is to protect the bank not only from the adverse claimant, but also from the depositor.

"The statute is applicable in all cases when 'an adverse claim to a deposit is made.' Its purpose is to relieve the bank of the financial responsibility attendant upon deciding whether the person entered upon the bank's books is entitled to the deposit money, or whether the person whom the adverse claimant says is the owner of the account should be recognized as such." *Phil Grossmayer Co. v. Campbell*, 214 Or. 265, 276, 328 P.2d 320, 325 (1958).

Thus the purpose of § 6–233 is to protect banks such as the appellee against liability to its depositor should it refuse to honor his order, and against liability to the adverse claimant should the claim prove valid. See *Solicitor for the Affairs of His Maj-*

*esty's Treasury v. Bankers Trust Co.*, 197 Misc 381, 94 N.Y.S.2d 658 (1949); Annot., 62 A.L.R.2d 1116 (1958).

■ Appellant further argues that the California court order is unenforceable as long as the appeal is pending and, therefore, no adverse claim exists upon the accounts. Even though a judgment is stayed, it is still a binding determination until, if ever, it is set aside. See Restatement (Second) of Judgments § 13, comment *b* (1982). "[T]he general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality." *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189, 61 S.Ct. 513, 515, 85 L.Ed. 725, 729 (1941). Furthermore, the constitutional requirement of full faith and credit requires that we recognize the valid judgments of a sister state. Restatement (Second) of Conflict of Laws § 93 (1971).

■ The money was deposited in the bank in trust for the benefit of Anne-Lise Parrette and Constance Keenan. A California court ordered the removal of appellant trustee and substitution of Wells Fargo, whereupon Wells Fargo demanded that the funds be turned over to it as successor trustee. We hold that the Arizona Bank acted lawfully and in accordance with § 6–233 when it recognized the California court order as notification of an adverse claim and exercised its discretion by refusing to pay the accounts over to appellant depositor.

Having determined that the bank acted lawfully in refusing to honor appellant's demands, we must now determine whether the bank acted correctly in freezing the accounts and filing an interpleader action.

The majority rule is that when a bank receives notice of an adverse claim it may "preserve the situation" by freezing the accounts long enough to permit a judicial resolution of the dispute. *Goldstein v. Riggs National Bank*, 459 F.2d 1161, (D.C. Cir.1972).

"[W]e hold that when a ... banking institution receives notice of an adverse claim to a deposit, said institution may freeze that deposit for a brief, reasonable period of time so as to permit the filing of litigation, either by interpleader or other other appropriate civil litigation, to resolve the adverse claims." *Stevenson v. First National Bank of Washington*, 395 A.2d 21, 24 (D.C.App.1978).

The Arizona Bank sought to secure an adjudication of the conflicting claims by filing the interpleader. See *Goldstein*, supra. The appellant, however, contends that one purpose of § 6–233 is to prevent interpleader in a case such as this. An interpleader action is inappropriate, he argues, because the "basic legal relationship" between the depositor and bank mandates that the bank deal with the depositor alone. Quite to the contrary, we believe this case to be ideally suited for interpleader.

"When two or more persons claim the same thing (or fund) of a third, and he, laying no claim to it himself, is ignorant which of them has a right to it, and fears he may be prejudiced by their proceeding against him to recover it, he may join such claimants as defendants and require them to interplead their claims so that he may not be exposed to double or multiple liability." Black's Law Dictionary 733 (5th ed.1979).

Rule 22(a), Rules of Civil Procedure, 16 A.R.S., states: "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Rule 22(b) further states that, after the plaintiff in interpleader deposits the disputed funds into court, it may be discharged from liability to any defendant.

■ The plaintiff stakeholder is entitled to interpleader when: 1) it has no interest in the fund or property in dispute; 2) multiple defendants claim the same debt from the plaintiff; 3) the adverse rights asserted arise from a common source; 4) the stakeholder has no independent liability to either of the claimants; and 5) the stake-

holder has no other adequate remedy to protect itself from litigation in which it has no interest. See *Schwartz v. Dodd,* 57 Ariz. 32, 110 P.2d 550 (1941) (interpleaded parties must both claim amount involved); *Hill v. Favour,* 52 Ariz. 561, 84 P.2d 575 (1938) (plaintiff must be mere disinterested stakeholder); *Kenney v. Bank of Miami,* 19 Ariz. 338, 170 P.2d 866 (1918) (interpleader of bank holding disputed deposit in checking account based on inadequate remedy at law). We hold an action in interpleader was correct under the circumstances presented.

■ Furthermore, the accounts were governed by a depositor's agreement which, in a paragraph entitled "Adverse Claims" provided:

"In the event any adverse claims, demands, suits, summonses, processes or subpoenas are made, brought or issued with respect to the account, the authority of the signers, or any transactions relating to the account or any deposits or withdrawals thereon, depositor agrees to indemnify and save and hold Bank harmless from any liability or expense in connection with such claims, demands, suits, summonses or subpoenas, including reasonable attorneys' fees and other expenses of prosecution, defense or compliance, unless due solely to Bank's negligence or Bank's breach of its agreement with depositor.

*Bank may at any time deposit any funds or items subject to claim, demand or suit with a court through interpleader action.* Depositor shall reimburse Bank for its reasonable attorneys' fees in connection with this action. *In the event of any such claim, demand, or suit, payment or withdrawal may be refused by the Bank until such claim, demand, or suit is finally adjudicated or a court order is issued which Bank is required to comply with."* (Emphasis added.)

Although the appellant denies receiving a copy of the agreement, it is nevertheless controlling. It was not necessary to prove that he received it, only that it was the governing document. Both signature cards signed by the appellant opening the accounts stated: "The undersigned acknowledges receipt of a copy of that separate writing entitled Depositor's Agreement and agrees that this account shall be governed by the provisions thereof." The interpleader action was in strict compliance with that part of the depositor's agreement.

■ The Arizona Bank is entitled to its attorney's fees on appeal. The depositor's agreement provides that the depositor shall reimburse the bank for its reasonable fees arising out of the interpleader action. This is also an action arising out of contract at least as between the bank and the appellant. An assessment of attorney's fees is therefore possible under A.R.S. § 12–341.01(A) and (B). However, both the bank and appellees Wells Fargo, Parrette, and Keenan argue that this appeal is frivolous and that attorney's fees should be assessed pursuant to A.R.S. § 12–341.01(C), Rule 25, Arizona Rules of Civil Appellate Procedure, 17A A.R.S., or A.R.S. § 12–2106. We agree. This is clearly a proper case for interpleader and we find this appeal devoid of merit and frivolous. The Arizona Bank and the appellees Wells Fargo, Parrette, and Keenan are directed to file a statement and affidavit pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A, A.R.S. Attorney's fees will be allowed under Rule 25 as a penalty and are to be paid by S.R. Hutchison personally and not by the estate or trust.

Affirmed.

HOWARD and FERNANDEZ, JJ., concur.