Richard P. POLZIN, et al., Appellants,

v.

**BANK OF HOLDEN, et al., Respondents.**

**No. WD 63420.**

Missouri Court of Appeals, Western District.

Jan. 25, 2005.

Jeffery A. Hanna, Warrensburg, MO, for appellants.

Douglas Harris, Warrensburg, MO, for respondents.

Before BRECKENRIDGE, P.J., HOWARD and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Richard P. Polzin and other owners of real estate[1] (Landlords) appeal the trial court's grant of summary judgment in favor of the Bank of Holden on their petition for declaratory judgment seeking a deter-

---

1. The other real estate owners joining Mr. Polzin in the petition for declaratory judgment are Patricia J. Polzin, Salvatore A. Lascuola, Russell R. Woods, Brenda J. Woods, Michael Gilbert, Paul Polychronis, William R. Zilliot, Corradina A. Zilliot, Michelle Kemppainen, Edwin O. Stark, Vickie L. Stark, Lee Younce, Mary Ann Younce, Lynne M. Reynolds, Betty Reynolds, James A. Stone, Deana M. Stone, Catina Coleman, and Curtis Coleman, Haneric II Apartments, L.L.C., Haneric III Apartments, L.L.C., Haneric IV Apartments, L.L.C., Sicat Properties, L.L.C., and the Sicat Family Partnership, L.L.C.

mination of the ownership of monies held in two bank accounts under the name of J.P. McNally, L.L.C., a property management company. Landlords assert that they are the owners of the monies in the two accounts that were seized by the Bank because McNally used the accounts to deposit monthly tenant deposits and security deposits on behalf of Landlords. On appeal, Landlords argue that the trial court erred in finding that the Bank was entitled to seize the monies in the accounts under its right of set-off. Landlords assert that they were not "adverse claimants" under section 362.375, RSMo 2000,[2] and, therefore, the trial court erred in granting summary judgment in favor of the Bank because Landlords failed to comply with that section's notice requirement before the Bank exercised its right of set-off. Section 362.375 is not applicable in this case, and there are disputed facts regarding whether the Bank had knowledge of facts relating to the Landlords' interest in the accounts that would preclude its right of set-off. The trial court's judgment is reversed and the cause is remanded.

### Factual and Procedural Background

In July 2000, McNally purchased Carefree Property Management. In December 2000, McNally purchased Total Property Management. To finance these purchases, Aaron Keating, president and chief officer of McNally, obtained loans for McNally from the Bank of Holden. Both property management companies were in the sole business of managing real estate owned by Landlords and others. On December 31, 2000, McNally consolidated its two loans with the Bank by executing a promissory note and a commercial security agreement. As collateral, McNally pledged "all monies, instruments, and savings, checking or other deposit accounts that are now or in the future in Lender's custody or control (excluding IRA, Keogh, trust accounts, and deposits subject to tax penalties if so assigned)."

Four days after consolidation of the loans, McNally opened two accounts with the Bank (account numbers 300–207–7 and 300–222–0). Both accounts were under the name "J.P. McNally, LLC d/b/a Carefree Property Management and/or d/b/a Total Property Management." McNally used the two accounts solely for the purpose of depositing monies received from the tenants of the parcels of real estate that it was managing for Landlords and others. Thus, the monies deposited into the two accounts belonged to Landlords and others for whom McNally was managing property. Virtually all of the checks written by McNally on the two accounts were preprinted with the notation "Rental Escrow Account."

On October 9 and 10, 2001, the Bank informed McNally that it was in default on its loan and that it was seizing all of the monies in the two accounts, as per its right of set-off. The Bank seized a total of $96,399.75 from the two accounts. On February 7, 2002, Landlords filed a petition for declaratory judgment against the Bank seeking an order declaring that the monies seized in the two accounts by the Bank were the property of Landlords. Thereafter, the Bank filed a motion for summary judgment. In its motion, the Bank claimed that it was entitled to seize the monies in the two accounts because Landlords were "adverse claimants" under section 362.375 and Landlords had failed to comply with the notice provision of that section prior to the time the Bank exercised its right of set-off. Therefore, the Bank argued, it was entitled to keep the seized money.

---

**2.** All statutory references are to the Revised Statutes of Missouri 2000.

Following a hearing on the Bank's motion, the trial court granted summary judgment in favor of the Bank and against Landlords, based on its finding that Landlords were "adverse claimants" under section 362.375 and Landlords failed to comply with that section before the Bank exercised its right of set-off. This appeal by Landlords followed.

## Standard of Review

Appellate review of a summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Review of the record is in the light most favorable to the party against whom judgment was entered. *Id.* This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* Summary judgment is appropriate when the moving party establishes a right to judgment as a matter of law and no genuine dispute as to any material fact exists. *Id.* at 378.

For movants who are the defending parties in a lawsuit, the *prima facie* showing required by Rule 74.04 is "necessarily different." *Id.* at 381. A defending party may establish a right to judgment, as a matter of law, by showing:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

## Adverse–Claim Statute Inapplicable

■ The Bank, in its motion for summary judgment, claimed that it had a statutory defense to Landlords' claim, that is, Landlords' failure to assert a claim to the monies deposited in the two accounts under the adverse-claim statute, section 362.375. The trial court found that the Bank was entitled to summary judgment, as a matter of law, because Landlords are adverse claimants under section 362.375 and failed to comply with that section before the Bank exercised its right of set-off. Landlords contend that section 362.375 is inapplicable in this case because Landlords and McNally are not "adverse claimants" to each other, since McNally is in agreement with Landlords that the monies deposited in the two bank accounts are the property of Landlords.

Subsection 1 of section 362.375 provides:

1. Notice to any bank or trust company doing business in this state of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause the bank or trust company to recognize the adverse claimant unless the adverse claimant shall also either procure a restraining order, injunction or appropriate process against the bank or trust company from a court of competent jurisdiction in a cause therein instituted by him wherein the person to whose credit the deposit stands is made a party and served with summons, or shall execute to the bank or trust company, in form and with sureties acceptable to it, a bond indemnifying the bank or trust company from any and all liability, loss, damage, cost and expenses for

and on account of the payment of the adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands on the books of the bank or trust company; provided, that this law shall not apply in any instance where the person to whose credit the deposit stands is a fiduciary for the adverse claimant, and the facts constituting the relationship, as also the fact showing reasonable cause of belief on the part of the claimant that the fiduciary is about to misappropriate the deposit, are made to appear by the affidavit of the claimant.

When considering the meaning of section 362.375, the primary rule "is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Dir. of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). There is no need to construe legislative provisions when the language is clear and unambiguous. *Id.* "In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence." *Id.* The plain and ordinary meaning of statutory language not expressly defined by statute is typically found in the dictionary. *Westrope & Assocs. v. Dir. of Revenue,* 57 S.W.3d 880, 883 (Mo.App.2001). "Only when the language is ambiguous or if its plain meaning would lead to an illogical result will the court look past the plain and ordinary meaning of a statute." *Lonergan v. May,* 53 S.W.3d 122, 126 (Mo.App.2001).

Section 362.375 provides that a bank is not required to give effect to an "adverse claim" to a deposit standing on its books to the credit of any person, unless the "adverse claimant" procures a court order or executes a proper bond in

favor of the bank. Since "adverse claimant" is not defined by the statute, it is helpful to consider the dictionary definition of that term. The dictionary definition of "adverse" is "[a]gainst; opposed (to)"; "[h]aving an opposing or contrary interest, concern, or position"; or "[c]ontrary (to) or in opposition (to)." BLACK'S LAW DICTIONARY 58 (8th ed.2004). The dictionary definition of "claimant" is "[o]ne who asserts a right or demand." BLACK'S LAW DICTIONARY 265 (8th ed.2004). Thus, based on the plain and ordinary language of the statute, an "adverse claimant" to a "deposit standing on" a bank's "books to the credit of any person" is "one who claims that a deposit belongs to him instead of to the one to whose credit it stands on the books of the bank." *Baden Bank of St. Louis v. Trapp,* 180 S.W.2d 755, 759 (Mo. App.1944). Thus, to have an adverse claim, there must be a claimed right to the deposited funds in opposition to the asserted right of the named owner of the account.

An undisputed fact in this case is that McNally, to whose credit the monies stand on the bank's book, disclaimed any interest in the accounts at issue in this case and stated that the funds belong to Landlords. Thus, under the plain and ordinary meaning of "adverse claimant," because Landlords do not claim a right to the deposits in opposition to McNally, Landlords would not be "adverse claimants" with respect to McNally, the depositor. Nor is there an "adverse claimant" under the statute because the Landlords claim an interest in the monies in the accounts that is adverse to the interest of the Bank or because the Bank claims an interest that is adverse to McNally, the named owner of the accounts. The statute only requires notice to the Bank of a claim that is adverse to "the person to whose credit the deposit stands." The Bank is not "the person to

whose credit the deposit stands." Additionally, there is nothing in section 362.375 to suggest that the bank in which the funds are deposited can itself be an "adverse claimant." Section 362.375 begins with the phrase "[n]otice to any bank." A bank would not need to provide notice to itself if it were claiming an interest in any deposited funds standing on its books. To interpret section 362.375 to provide that a bank can be an adverse claimant and, therefore, must provide itself with notice of its own adverse claim, would lead to an illogical result that the plain and ordinary meaning of the statute does not support.

■ This limitation on the application of section 362.375 to the circumstance where there is a claim adverse to the rights of the named owner of the account is consistent with the problem the legislature sought to remedy by enacting the adverse-claim statute. *See State ex rel. Whiteco Indus., Inc. v. Bowers,* 965 S.W.2d 203, 207 (Mo.App. 1998) (in determining legislative intent, court is to consider the context in which the language of the statute is used and the "problem the legislature sought to address with the statute's enactment"). The problem section 362.375 sought to address can best be illustrated by describing a possible dilemma that a bank may face. As a general rule, a bank is required to honor the order of a depositor. *See Gaffney v. Cmty. Fed. Sav. & Loan Ass'n,* 706 S.W.2d 530, 534 (Mo.App.1986) (bank and depositor have debtor/creditor relationship based on contract and bank has contractual duty to charge depositor's account only on depositor's order). If, however, a bank receives notice that funds in an account belong to someone other than the depositor, the bank is faced with a dilemma. *Ariz. Bank v. Wells Fargo Bank,* 148 Ariz. 136, 713 P.2d 337, 339 (1985). If the bank honors the demands of the adverse claimant, and the claim subsequently turns out

to be invalid, the bank may be held liable to the depositor. *Id.* On the other hand, if the bank pays the funds to the depositor, and the adverse claimant's claim subsequently turns out to be valid, the bank may be held liable to the adverse claimant. *Id.* "In 1940, the American Bankers Association formulated a model statute to protect banks from just such a dilemma." *Id. See also Gendler v. Sibley State Bank,* 62 F.Supp. 805, 811 (N.D.Iowa 1945); C.C. Marvel, Annotation, *Construction, Application, and Effect of Statute Relating to Notice to Bank of Adverse Claim to Deposit,* 62 A.L.R.2d 1116 (1958). This uniform adverse-claim statute has been adopted by a majority of states. Section 362.375 is the uniform adverse-claim statute that Missouri adopted.

■ Thus, the purpose of section 362.375 "is to afford the bank immediate and complete protection when [ ] a[n adverse] claim is made, where otherwise it would be required, upon receipt of notice of the claim, to hold the funds long enough to give the claimant a reasonable opportunity to substantiate his claim." *Trapp,* 180 S.W.2d at 759 (interpreting section 7982, the predecessor to section 362.375). In other words, the adverse-claim statute protects "a bank from deciding at its peril which contesting claimant is entitled to the proceeds of an account it holds for one of them." *Domain Indus., Inc. v. First Sec. Bank & Trust Co.,* 230 N.W.2d 165, 169 (Iowa 1975). Specifically, section 362.375 provides that when a bank is notified of an adverse claim, the bank is not required to recognize the adverse claimant, unless it is directed to do so by a court order or unless a bond is furnished to the bank. *See Gendler,* 62 F.Supp. at 811.

Here, by claiming that Landlords are "adverse claimants," the Bank attempts to use section 362.375 to improve its position to the disadvantage of Landlords. The

adverse-claim statute, however, "was not intended to afford a bank the opportunity to improve its own position to the disadvantage" of either the depositor or an adverse claimant. *Domain Indus.*, 230 N.W.2d at 169. *See also Bank of W. Orange v. Assocs. Disc. Corp.*, 197 So.2d 858, 862 (Fla.Dist.Ct.App.1967) (adverse-claim statute inapplicable under facts of case where the adverse claim was that of the bank for a debt due it from the depositor).

■ Rather, the purpose of the statute is merely to protect a bank from potential double liability, that is, liability to its depositor should it refuse to honor his order and liability to an adverse claimant should his claim prove valid. Here, the Bank is not open to double liability as contemplated by the adverse-claim statute because the depositor in this case, McNally, is in agreement with Landlords that the monies in the two accounts belong to Landlords. Consequently, Landlords are not "adverse claimants" relative to the rights of McNally, and the statute was not intended to govern a claim adverse to the Bank's claimed rights to the deposited funds. Therefore, section 362.375 is inapplicable in this case. Accordingly, the trial court erred in sustaining the Bank's motion for summary judgment on the basis that Landlords failed to comply with the notice requirement of section 362.375.

### Disputed Facts Exist Regarding Whether Bank Entitled to Set–Off

■ Despite the inapplicability of section 362.375, the Bank would still be entitled to summary judgment if there were no disputed facts regarding whether the Bank was entitled to seize the monies in the two McNally accounts under its claimed right of set-off. Landlords assert, on appeal, however, that the Bank is not entitled to summary judgment based on its right of set-off because Landlord presented evidence, in response to the Bank's motion for summary judgment, that the Bank knew or had sufficient facts to put it on inquiry to determine whether the monies in the two accounts were held by McNally in a fiduciary capacity. This evidence is contrary to the Bank's evidence from its president that no representations were made to it that McNally held the accounts on behalf of third parties and no other conduct by McNally was sufficient to put it on inquiry to ascertain the nature of McNally's interest in the account. Landlords claim that its evidence creates a genuine dispute as to these material facts that must be resolved by the trier of fact, precluding summary judgment.

■ In general, "a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply a debtor's deposits to his debts as they become due." *Reynolds County Mem'l Hosp. v. Sun Bank of Am.*, 974 S.W.2d 663, 665 (Mo. App.1998). An exception to this general right of set-off exists, however, when the bank has knowledge that the money does not belong to the depositor or has "sufficient knowledge of facts relating to the interest of others in the account as to put the bank on inquiry to ascertain the trust character of the account." *N. Ins. Co. of N.Y. v. Traders Gate City Nat'l Bank of Kansas City, Mo.*, 239 Mo.App. 132, 186 S.W.2d 491, 497 (1945). A bank's knowledge of the "trust character" of a deposit can be shown by direct or indirect evidence, or by showing that the bank would have sufficient information to put it on inquiry as to the trust character of the deposit. *Id.* at 497–98.

In response to the Bank's motion for summary judgment, Landlords presented evidence that, if true, would defeat the

Bank's right of set-off because the evidence showed that the Bank had actual knowledge of the trust character of the two McNally accounts. Specifically, in the affidavit of Mr. Keating, President of McNally, he stated that he personally informed the Bank's President, Michael Terry, that he was going to be opening two bank accounts to be used in connection with J.P. McNally. He said he told Mr. Terry that he would be using one account for monthly tenant deposits and the other account for tenant security deposits. In their response to the Bank's motion for summary judgment, Landlords also presented evidence that the Bank was told the nature of McNally's business, which was a property management company. Finally, Landlords' response included evidence that the Bank had notice of the trust or fiduciary nature of the accounts because at the top of virtually all of the checks used by McNally to draw on the two accounts was the notation "Rental Escrow Account." Consequently, this evidence creates a genuine issue of material fact concerning whether the Bank's right of set-off in the two McNally accounts was precluded by notice to the Bank of the trust character of the accounts.

### Conclusion

Because Landlords are not "adverse claimants," section 362.375 is inapplicable. Thus, Landlords' failure to comply with section 362.375's notice requirement is not a statutory defense available to the Bank, and the trial court erred in granting summary judgment in favor of the Bank on that basis. In addition, the Bank is not entitled to summary judgment because disputed facts exist regarding whether the Bank had a right of set-off because it had sufficient knowledge of facts relating to the trust character of the accounts. Therefore, the trial court's summary judg-

ment is reversed and the cause is remanded.

All concur.