NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROGER ASHKENAZI, et al., *Plaintiffs/Appellants*,

*v.*

RICKMAN BROWN, et al., *Intervenors/Appellees*.

No. 1 CA-CV 19-0811
FILED 2-25-2021

---

Appeal from the Superior Court in Maricopa County
CV 2014-000071
CV 2014-006829
(Consolidated)
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

---

COUNSEL

Sherman & Howard LLC, Phoenix
By David A. Weatherwax, Craig A. Morgan, Matthew A. Hesketh,
Sean M. Moore
*Counsel for Plaintiffs/Appellants*

Ryan Rapp Underwood & Pacheco PLC, Phoenix
By J. Henk Taylor
*Counsel for Intervenors/Appellees*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Peter B. Swann joined.

---

**C A M P B E L L**, Judge:

**¶1**　　　　Roger Ashkenazi, et al. (collectively, "the Ashkenazi Group") appeal from the superior court's order distributing certain deposited funds to Rickman Brown, et al. (collectively, "the Attorneys"). For the following reasons, we affirm.

## BACKGROUND

**¶2**　　　　While the issues raised on appeal are decidedly narrow, the history of this litigation is quite complex. Apart from one noted exception, the relevant facts are not disputed.

**¶3**　　　　In 2010, the Attorneys filed a securities fraud complaint on behalf of a large group of investors against Greenberg Traurig ("Greenberg") and other professionals who worked for an insolvent mortgage lender, Mortgages Ltd. ("Lender"). After the Attorneys negotiated a settlement of the claims against Greenberg, a majority of the plaintiffs agreed to settle their claims ("the Greenberg settlement"). Although each plaintiff executed an engagement agreement ("the engagement agreement"), which included a majority-rule provision requiring all plaintiffs to enter into a settlement agreement in the event a majority of the plaintiffs agreed to a specific settlement offer, a minority group of plaintiffs ("the Baldino Group") rejected the Greenberg settlement and refused to execute a release of their claims as was contemplated under the terms of the settlement.

**¶4**　　　　Pending the superior court's approval of the Greenberg settlement, the Baldino Group hired new counsel to contest the settlement and pursue its members' claims separately. Subsequently, the court found the engagement agreement's majority-rule provision enforceable, overruled the Baldino Group's objection, and approved the Greenberg settlement. The Baldino Group appealed.

¶5　　　　Thereafter, the Ashkenazi Group also retained new counsel and sued the Baldino Group in the underlying action. The Ashkenazi Group alleged the Baldino Group's interference with, and rejection of, the Greenberg settlement was, among other things, a breach of contract, a breach of fiduciary duty, and an abuse of process. The superior court granted partial summary judgment in favor of the Ashkenazi Group on its claim for breach of contract, finding the Baldino Group's refusal to abide by the terms of the engagement agreement in regard to the Greenberg settlement was a breach of contract that prevented the Ashkenazi Group from recovering its share of the Greenberg settlement proceeds. The court refused the Ashkenazi Group's request for an Arizona Rule of Civil Procedure ("Rule") 54(b) judgment, however, pending resolution of the overlapping claims for breach of fiduciary duty and abuse of process.

¶6　　　　In a second parallel litigation, the Attorneys and the Baldino Group asserted claims against each other arising from the Greenberg settlement. After securing an arbitration award in their favor, the Attorneys petitioned a federal court to confirm the award, and the court entered a $2.2 million judgment ("the federal judgment"). Once the federal judgment became final, the Attorneys began collection efforts against the Baldino Group. Among other actions, the Attorneys placed a first-position lien on certain unencumbered real property ("the Forest Highlands property") owned by a member of the Baldino Group with a value of at least $900,000.

¶7　　　　About the same time, the Ashkenazi Group and the Attorneys discovered that the Baldino Group was scheduled to receive a distribution from Lender's remaining assets through Lender's bankruptcy trustee. By this time, both the Ashkenazi Group and the Attorneys had rulings against the Baldino Group, though only the Attorneys had obtained a final judgment. To resolve the conflicting claims, Lender's manager ("Manager"), appointed by the bankruptcy court to oversee distribution of Lender's assets, filed an interpleader complaint in the underlying superior court action. After the court granted Manager's motion to interplead, Manager deposited the disputed funds from the Baldino Group's distribution with the court.

¶8　　　　In the meantime, the Ashkenazi Group and the Attorneys reached an agreement to split both the interpleaded funds and the Greenberg settlement proceeds ("the split agreement"), with 78.5% allocated to the Ashkenazi Group and the remaining 21.5% allocated to the Attorneys. According to the Attorneys, the parties agreed that no portion of the Greenberg settlement proceeds would be distributed to the Ashkenazi Group if the federal court applied the monies toward the federal

judgment obtained by the Attorneys in the second parallel litigation.  The Ashkenazi Group denies such a condition, however, and claims the split agreement was absolute.

**¶9** After the Baldino Group's challenge to the Greenberg settlement agreement ended unsuccessfully, Greenberg transferred the settlement proceeds directly to the Attorneys. With nearly $1.5 million of the Greenberg settlement proceeds earmarked for its members, the Baldino Group asked the federal court to credit its share of the Greenberg settlement to the Attorneys and against the federal judgment. The Ashkenazi Group, in turn, demanded that the Attorneys either pay its members 78.5% of the Baldino Group's share of the Greenberg settlement ($1,173,600.46) or place the funds in the superior court's interpleader account. The Attorneys, in response, moved to deposit the $1,173,600.46 into the superior court's interpleader account (having retained $321,431.97 (21.5%) of the Baldino Group's share), advising the superior court "of the interplay" between the underlying litigation and the "related federal court collection proceedings," and requesting that the court adjudicate the disputed claims. The Baldino Group opposed the motion, again arguing that the disputed funds should be applied solely as a credit on the federal judgment.

**¶10** The superior court entered a deposit order ("the deposit order"), incorporating by reference its prior ruling regarding the distribution of Manager funds, which explained that "interpleader is an equitable action controlled by equitable principles."[1] The court also noted that the federal court had not yet determined whether to credit the Baldino Group's portion of the Greenberg settlement proceeds toward the federal judgment, and stated it would "be receptive to issuing an amended order releasing the funds to the Attorneys" in the event the federal court did so.

**¶11** Asserting a significant change in circumstances, the Ashkenazi Group moved to dismiss its remaining claims against the Baldino Group and requested a Rule 54(b) judgment on the breach of contract claim. Granting the motion to dismiss the remaining claims, the superior court entered a final judgment of over $5.4 million (inclusive of attorneys' fees and costs) in favor of the Ashkenazi Group and against the

---

[1] Although the superior court referred to its previous interpleader order, the Attorneys moved to deposit the Greenberg settlement proceeds pursuant to Rule 67, which governs deposits with the court generally, rather than Rule 22, which specifically governs interpleader actions.

Baldino Group.[2] With that judgment secured, the Ashkenazi Group placed a second-position lien (the Attorneys having secured the first-position lien) on the Forest Highlands Property.

¶12      Meanwhile, after tendering some payments on the federal judgment, the Baldino Group again requested that the federal court credit its share of the Greenberg settlement proceeds toward the federal judgment. Although the Attorneys argued that the deposited funds should be credited toward the Ashkenazi Group's judgment, not their own, the federal court determined the Baldino Group's share of the Greenberg settlement proceeds, combined with other payments, satisfied the federal judgment.

¶13      Given the federal court's ruling, effectively voiding their post-judgment collection efforts against the Baldino Group, the Attorneys requested that the superior court distribute the $1,173,600.46 to them. The Ashkenazi Group opposed the motion and cross-moved for an order disbursing the deposited monies to its members.

¶14      Because allocation of the deposited funds to the Ashkenazi Group would provide the Baldino Group with a credit against both the Ashkenazi Group's judgment and the federal judgment, the superior court concluded that distributing the deposited funds to the Attorneys was "the more equitable solution." In so doing, the court expressly made no determination regarding the terms of the split agreement and noted that its ruling did not preclude the Ashkenazi Group from pursuing breach of contract, breach of fiduciary duty, malpractice, or any other claim against the Attorneys.

¶15      After denying the Ashkenazi Group's motion for reconsideration, the superior court reduced its rulings to a final order ("distribution order"). The Ashkenazi Group appealed.

---

[2]     The Baldino Group timely appealed from the final judgment. In a recent decision, this court concluded that the Ashkenazi Group failed to present evidence of actual losses in its motion for summary judgment, and therefore the superior court erred by granting summary judgment on damages. *Ashkenazi v. Baldino*, 1 CA-CV 19-0049, 1 CA-CV 19-0050, 2020 WL 1527415 at *3, ¶ 11 (Ariz. App. Mar. 31, 2020) (as amended) (mem. decision). At this point, the matter is still pending on remand.

**DISCUSSION**

¶16 The Ashkenazi Group raises several challenges to the superior court's distribution order.

¶17 Although the parties dispute the applicable standard of review, each asked the superior court to apply equitable principles in resolving their conflicting claims to the deposited funds. While the "availability of equitable relief" is subject to de novo review, we uphold a superior court's equitable remedy absent an abuse of discretion. *Loiselle v. Cosas Mgmt. Group, LLC*, 224 Ariz. 207, 210, ¶ 8 (App. 2010). As defined by the Arizona Supreme Court, discretion "is a liberty or privilege allowed to a judge, within the confines of right and justice," to determine "what is fair, equitable, and wholesome, as determined by the peculiar circumstances of the case, and as discerned by his personal wisdom and experience." *Walker v. Kendig*, 107 Ariz. 510, 513 (1971) (citation omitted). Equitable considerations include the relative hardships of the parties and the adequacy of other remedies. *Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 635, ¶ 9 (App. 2000).

¶18 In its distribution order, the superior court acknowledged that the Ashkenazi Group had a reasonable claim to the deposited funds. But given the federal court's ruling—that the Baldino Group's portion of the Greenberg settlement proceeds, combined with other payments, satisfied the federal judgment—the superior court concluded that equitable principles compelled allocation of the funds to the Attorneys. Otherwise, the superior court explained, the Attorneys would simultaneously lose their interest in the Baldino Group's share of the Greenberg settlement proceeds, deposited with the superior court, and their ability to pursue collection on the federal judgment. In other words, disbursing the deposited funds to the Attorneys would permit "maximum cumulative recovery" from the Baldino Group, while allocation of the deposited funds to the Ashkenazi Group "would result in a windfall to the Baldino [Group] at [the] Attorneys' expense." In outlining its reasoning, the court also noted that satisfaction of the federal judgment operated to extinguish the Attorneys' first-position lien on the Forest Highlands Property, effectively elevating the Ashkenazi Group's lien on the property from second to first position. As a result, the Ashkenazi Group likewise would have received a double benefit had the superior court distributed the deposited funds to its members because the federal court's satisfaction order improved their ability to collect on a Baldino Group asset, namely the Forest Highlands Property.

¶19      As a preliminary matter, the Attorneys contend that the Ashkenazi Group waived any challenge to the distribution order by failing to contest the deposit order. According to the Attorneys, the deposit order stated that the deposited funds would be allocated to the Attorneys if the federal court credited the Greenberg settlement proceeds against the federal judgment. This characterization of the deposit order is incorrect. Rather than mandate distribution of the deposited monies to the Attorneys in the event the federal court credited the Greenberg settlement proceeds against the federal judgment, the deposit order simply stated that in such a circumstance, the court would "be *receptive* to issuing an amended order releasing the funds to the Attorneys." (Emphasis added). Even if the Attorneys initially misconstrued the deposit order on this point, at the hearing on the parties' cross-motions for distribution, the superior court made clear that the deposit order only expressed the court's *willingness* to *consider* the import of such a federal ruling. Despite the court's clarification, the Attorneys persisted in mischaracterizing the deposit order, both in the superior court and on appeal. To be clear, the deposit order did not mandate a distribution of the deposited monies to the Attorneys if the federal court credited the Greenberg settlement proceeds against the federal judgment, and the Ashkenazi Group did not waive its subsequent challenges to the distribution order by failing to contest the deposit order.

¶20      Turning now to the distribution order, the Ashkenazi Group first contends that the Attorneys breached their fiduciary duties and violated ethical rules by "competing" for the Greenberg settlement proceeds. In making this argument, the Ashkenazi Group relies solely on "admissions" the Attorneys allegedly made in their court filings.

¶21      Without question, the Attorneys opposed the Baldino Group's motion for satisfaction of judgment in the federal court. The Attorneys argued that the Greenberg settlement proceeds were "not immediately payable" to them because the Ashkenazi Group claimed 78.5% of the monies and therefore they were "legally and ethically *required* to interplead those funds." The Attorneys also acknowledged that they owed a fiduciary duty to the members of the Ashkenazi Group and had an "ethical responsibility" to seek a court order resolving the parties' competing claims to the Greenberg settlement proceeds.

¶22      At the hearing on the parties' cross-motions for distribution, the superior court questioned the Ashkenazi Group's contention that the Attorneys' fiduciary duties and ethical responsibilities prevented them from accepting payment of the Baldino Group's share of the Greenberg settlement proceeds. In response, counsel for the Ashkenazi Group cited

the Attorneys' purported admissions and argued that a lawyer may not compete against his client "for the same limited pot of assets."

¶23        As noted by the superior court, an attorney may not delay or otherwise impede his client's ability to collect on a judgment. Apart from that, however, the Ashkenazi Group has not cited, and our research has not revealed, any ethical rule that precludes a lawyer from accepting payment on a judgment from an opposing party before his client receives satisfaction on an independent judgment against the same opposing party.

¶24        Next, the Ashkenazi Group contends that its members are entitled to the deposited monies, as a matter of law, pursuant to the parties' split agreement. Although the Ashkenazi Group maintains that the split agreement is absolute, it argues that even if its members orally agreed to a condition based on the federal court's possible application of the Greenberg settlement proceeds toward the federal judgment, such a condition is invalid because it was not reduced to writing as required by Arizona Rule of Professional Conduct ("E.R.") 1.8(a).

¶25        As relevant here, E.R. 1.8(a) precludes a lawyer from entering into a "business transaction with a client or knowingly acquir[ing] . . . [a] pecuniary interest adverse to a client unless:" (1) the transaction and terms are "fair and reasonable to the client" and "fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;" (2) the client is advised in writing to seek "independent legal counsel on the transaction;" and (3) the client gives written informed consent to the transaction. The rule is intended to prevent an attorney from using his "legal skill and training, together with the relationship of trust and confidence between lawyer and client," to "overreach[]" and take advantage of the client. Model Rules of Prof'l Conduct R. 1.8 cmt. (Am. Bar Ass'n 2020).

¶26        To support its claim, the Ashkenazi Group cites *Matter of Neville*, 147 Ariz. 106 (1985) in which the supreme court analyzed the rule[3] regulating a lawyer's business relationship with his client and explained that the ethical bar to a financial transaction between lawyer and client, absent full disclosure and consent, protects a client who may otherwise

---

[3]      At that time, the predecessor to E.R. 1.8 precluded a lawyer from entering into a business transaction with a client if the parties had "differing interests" and if the client expected "the lawyer to exercise his professional judgment . . . for the protection of the client," unless the client consented after full disclosure. *Id*. at 110.

view his lawyer "as a protector rather than as an adversary." 147 Ariz. at 111. Recognizing "that lawyers are provided no bright line by which to determine when they can act as ordinary business people in relation to the interests of those whom they have represented in the past or whom they represent on other matters at the present," *Id.* at 112, the supreme court set forth several factors to consider "on a case-by-case basis," such as the length and extent of the attorney-client relationship, the sophistication of the client, and "perhaps most important," the "presence or absence of independent counsel for the client in the very transaction under consideration." *Id.* at n.4. As the supreme court explained, when the client "is represented by another lawyer," he generally does "not have reasonable grounds to expect the former lawyer to protect him." *Id.*

¶27        In this case, the members of the Ashkenazi Group were represented by independent legal counsel who negotiated the split agreement on their behalf. Under these circumstances, the Ashkenazi Group could not reasonably have expected the Attorneys to protect their interests in the split agreement,[4] and we cannot conclude, as a matter of law, that E.R. 1.8(a) precluded an oral condition concerning the possible application of the Greenberg settlement proceeds to the federal judgment.

¶28        Alternatively, the Ashkenazi Group contends that the superior court improperly distributed the deposited funds without determining which party was legally entitled to the monies under the split agreement. As support for its claim, the Ashkenazi Group cites *Metropolitan Life Insurance, Co. v. Reynolds*, which outlines a two-step process for resolving interpleader actions: (1) "the court determines whether an interpleader action is appropriate; and (2) the court adjudicates the competing claims, entering judgment in favor of the party who is legally entitled to the interpleaded funds. CV-13-01253-PHX-BSB, 2013 WL 6048808, at *2 (D. Ariz. 2013) (mem. decision).

¶29        To qualify as an interpleader action, however, the party moving to interplead monies must be a disinterested stakeholder with "no interest in the funds or property in dispute." *Arizona Bank v. Wells Fargo Bank, N.A.*, 148 Ariz. 136, 140 (App. 1985). In this case, the Ashkenazi Group and the Attorneys submitted competing affidavits attesting to the terms of

---

[4]        In its opening brief, the Ashkenazi Group concedes that its members did not rely on the Attorneys to protect their interests in the split agreement. Indeed, they "were shocked" when the Attorneys initially suggested the split agreement and "angry" that the Attorneys "were putting their own interests before that of their own clients."

the split agreement. The Attorneys neither disclaimed an interest in the deposited funds nor moved for an interpleader action pursuant to Rule 22. Instead, the Attorneys moved to deposit the funds pursuant to Rule 67(a), which expressly permits a party to deposit monies with the court "whether or not that party claims any of it." Therefore, this matter is not a true interpleader action, and the question before us is whether Rule 67 requires a superior court to determine which party is legally entitled to deposited funds before entering a distribution order.

¶30        Because no Arizona case interprets the requirements of  Rule 67, both parties rely on federal cases that interpret the  corresponding federal rule to support their respective positions. But unlike its federal counterpart, Arizona's Rule 67(b) authorizes the superior court to "order that the money or property be delivered to the party claiming it  on conditions that the court finds just." Thus, by its express terms, Arizona's Rule 67 countenances an equitable remedy for funds deposited with  the court.

¶31        In this case, the factual dispute between the Ashkenazi Group and the Attorneys concerning the terms of the split agreement raised a new claim, wholly separate from the underlying action between the  Ashkenazi Group and the Baldino Group. Recognizing that this new claim could lead to protracted litigation, the superior court deferred ruling on the factual dispute and returned the deposited funds to the Attorneys based on the relative equities of the parties at that stage of the proceedings. In so doing, the court expressly stated that its distribution order did not foreclose the Ashkenazi Group from litigating the split agreement in a new action.

¶32        Finally, the Ashkenazi Group asserts that equity  favored allocation of the Greenberg settlement proceeds to its members, noting the Attorneys have collected substantially more money from the  Baldino Group, as well as a considerable sum from their representation of the Ashkenazi Group, and separate litigation against the Attorneys will cost both time and money. While the Attorneys have recovered more money from the Baldino Group than the members of the Ashkenazi Group, the federal court's satisfaction order foreclosed any additional collection efforts by the Attorneys against the Baldino Group. This  determination substantially improved the Ashkenazi Group's ability to collect from  the Baldino Group on an unencumbered asset of significant value—the  Forest Highlands Property. Given these facts, the superior court did not abuse its discretion by distributing the deposited monies to the Attorneys.

**CONCLUSION**

**¶33** For the foregoing reasons, we affirm the superior court's distribution order. Both parties request an award of their attorneys' fees on appeal pursuant to A.R.S. § 12-341.01. In our discretion we deny both requests. We award the Attorneys their costs incurred on appeal, conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA